**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg**

**RANDALL RICHARD STEBBINS,**

        Petitioner,

    v.                              **Crim. Action No.    1:22-CR-21**
                                        **Civil Action No.    1:24-CV-34**

**UNITED STATES OF AMERICA,**

        Respondent.

## <u>REPORT AND RECOMMENDATION</u>

### I.    INTRODUCTION

On April 1, 2024, Randall Richard Stebbins ("petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action Number 1:23-CV-105, Doc. 1; Criminal Action Number 1:22-CR-21, Doc. 58].[1]  The Clerk issued petitioner a Notice of Deficient Pleading on April 1, 2024 [Doc. 61], and on April 22, 2024, he filed his petition on the required Court-approved form. [Doc. 64]. On July 10, 2024, the respondent filed a response in opposition to the petition. [Doc. 72]. The matter is currently pending before the undersigned for a Report and Recommendation pursuant to LR PL P 2.  For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss petitioner's motion.

### II.    PROCEDURAL HISTORY

---

[1] From this point forward, all document numbers refer to petitioner's criminal action.

**A. Conviction and Sentence**

On March 1, 2022, petitioner was charged in a two-count Indictment with one count of unlawful possession of a firearm by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and § 924(a)(2), and with possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). [Doc. 1].

On November 10, 2022, petitioner appeared before the undersigned and entered a plea of guilty, pursuant to a written plea agreement [Doc. 40], to possession with intent to distribute methamphetamine, as charged in Count II of the Indictment. [Docs. 38, 40, & 41].  On April 4, 2023, Judge Kleeh sentenced petitioner to 140 months imprisonment, followed by a three-year term of supervised release and dismissed Count I of the Indictment, pursuant to the terms of the plea agreement.

**B. Federal Habeas Corpus**

Petitioner did not appeal his conviction or sentence, and instead filed the instant petition on April 22, 2024, the sole ground of which is ineffective assistance of counsel. Petitioner claims that his counsel was ineffective for failing to challenge the use of the applicable Sentencing Guideline calculation because the distinction between pure methamphetamine and a mixture of methamphetamine resulted in his sentence being increased due to the purity of the methamphetamine and not his actual culpability.  [Doc. 64 at 5].  Specifically, he alleges that his counsel failed to present the Court with case law petitioner had provided to him and to move for a continuance to further investigate and develop the argument. [Doc. 64-1 at 2–4].

### III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner may file a motion challenging the sentence imposed by a federal court, "if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence 'is otherwise subject to collateral attack.'"  *Beyle v. United States*, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (quoting 28 U.S.C. § 2255(a)).  "A sentence is 'otherwise subject to collateral attack,' if a petitioner shows that the proceedings suffered from 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *Id*. (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).  "A petitioner bears the burden of proving one of those grounds by a preponderance of the evidence."  *Id*. (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).  "If he satisfies that burden, the court may vacate, set aside, or correct the sentence."  *Id*. (citing 28 U.S.C. § 2255(b)).  "However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion."  *Id*. (citing *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970)).

Finally, this Court notes that pro se allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).

### IV.    ANALYSIS

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis:

first, he must show both that counsel's performance fell below an objective standard of reasonableness and, second, that he suffered prejudice as a result of counsel's alleged deficient performance. *Id*. at 668, 669,687–88.

When considering the performance prong of ***Strickland***, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689; *see also **Gray v. Branker***, 529 F.3d 220, 228–29 (4th Cir. 2008). This first prong requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" ***Lewis v. Wheeler***, 609 F.3d 291, 301 (4th Cir. 2010) (quoting ***Strickland***, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." ***Strickland***, 466 U.S. at 689. The court must furthermore indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." ***Strickland***, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." ***Bunch v. Thompson***, 949 F.2d 1354, 1363 (4th Cir.1991).

To satisfy the prejudice prong of ***Strickland***, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. This second prong requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. ***Strickland***, 466 U.S. at 687. If it is clear the petitioner has failed

4

to satisfy either prong of the Strickland standard, a court need not inquire into whether he satisfied the other.

**A.     Petitioner is unable to show his counsel was ineffective for failing to argue against the use of the applicable Sentencing Guidelines calculation because defense counsel did make the argument that petitioner is claiming he failed to advance.**

Petitioner argues that his counsel was ineffective for failing to challenge the Court's use of the applicable methamphetamine sentencing guideline, which he claims is inherently unfair given the discrepancy in offense levels between a methamphetamine mixture and actual (pure) methamphetamine, or "ice," which is defined as methamphetamine that is at least 80% pure. U.S.S.G. §2D1.1(c), Note(C)**.** The plea agreement herein reflects that petitioner possessed 0.93 grams of methamphetamine with a purity of 99% and 49.561 grams of methamphetamine with a purity of 100%.  [Doc. 40 at 4].

Petitioner claims that prior to his sentencing, he informed his counsel about ***U.S. v.*** ***Robinson***, 2022 WL 17904534 (S.D. MS 2022), in which the District Court for the Southern District of Mississippi granted the defendant's Motion for Deviation from the U.S. Sentencing Guidelines, holding that with respect to methamphetamine, "purity is no longer probative of the defendant's culpability." (***Id***. at *3).  The Court, in ***Robinson***, based its ruling on national data and trends showing the "remarkably" high purity of most methamphetamine confiscated by U.S. authorities at all distribution levels, indicating that higher purity is not a good indicator of a defendant's place in the hierarchy of the criminal organization with respect to whether he is a "kingpin or a low-level addict."  ***Id***. (internal citations omitted). Petitioner alleges his counsel failed to raise ***Robinson*** despite petitioner providing him with the case and further, that he failed to "adhere to [petitioner's]

5

direct instruction to utilize the information" to move for a continuance so that counsel could "properly investigate and incorporate the *Robinson* argument into his case in order to request a downward variance." [64-1 at 3].

According to petitioner, his counsel "failed to pursue provided effective lines of defense, opting instead not to challenge the Sentencing Guideline's utilization of drug purity as a proxy for Movant's culpability, thereby increasing his exposure." [Doc. 58-1 at 7]. He further claims that "such non-pursuit was against Movant's express wishes, as counsel inexplicably abandoned this strategic line of defense." [Id.]. Petitioner argues that his sentence should have been calculated without considering the purity of the methamphetamine, which would have resulted in a significantly lower Guideline range. He asserts that the Guidelines' use of purity as a proxy for his culpability was "unreasonable on its face." [Doc. 64-1 at 6]. In addition to *Robinson,* petitioner references cases from other districts in which this argument has been successful, and he moves the Court for a downward variance from his 140-month sentence. [Doc. 64-1 at 3, 4–6].

The record, however, not only fails to support petitioner's claims, but, in fact, reflects quite the opposite. Indeed, although defense counsel did not object to the Court's guideline findings, he did argue against the use of the methamphetamine sentencing guidelines calculation for actual methamphetamine, expressly raising the issue of the discrepancy in offense levels between actual and mixed methamphetamine in relation to petitioner's degree of culpability. Moreover, despite petitioner's claims to the contrary, his counsel not only raised the issue, but in support thereof, he did, in fact, cite the

*Robinson* case. [Doc. 75 at 12–13].[2]

      Mr. Erhard:  But there's a case out of the Southern District of Mississippi called Tementa Robinson v. USA. And ---

      The Court: Can I ask you to spell that, Mr. Erhard?

      Mr. Erhard:  The first name is unique, and I'm sure there are tons of Robinsons, so that's why I mentioned it. Tementa is T-E-M-E-N-T-A Robinson v. USA. It's – it would –the appeal by the Government was just filed.  It's a district court opinion, and the appeal was just filed March 9th. So it - - I don't think it has any precedential value, but if the Court finds its reasoning to be persuasive.

        It stands for the proposition that the purity in methamphetamine, when it was - - when the offense levels were enacted by the Commission, there wasn't empirical evidence for methamphetamine.  And so at the time, the thinking was that it wasn't punishing - - it was punishing based on the inference that the more pure the substance, the more culpable the defendant's role was in the offense.  The theory being that, like cocaine and other drugs, that as it came down from whoever the kingpin was, that it would be cut and cut and cut so that the court could rely on sentencing someone with a low meth purity and take comfort in the knowledge that is probably not a person who is a primary actor in the meth distribution.

         And that makes sense.  That's rational.  But the problem with that is I haven't had a meth cook case or a home cook case, as we used to call them, in years.  And everything - - all of the meth we get now is as pure as the labs in Mexico make it.  And it's always above 80 percent.

        …That case is pending before the Fifth Circuit. And - - but I just thought it worth mentioning that that's a pretty persuasive argument.  Policy may go the other way.  But at least rationale-wise, I think that - - I don't - - in my limited experience, I don't see any meth cases below 80 percent anymore.  And I - - so I don't that that that - - that the justification upon which it terms - - that is, that the purity is in some way indicative of the defendant's role - - I don't believe that applies anymore.  I'm sure there was a time when it did, but I think that's not the case anymore.

---

[2]  The transcript for petitioner's sentencing proceeding is divided into two separate documents, based on the Court's decision to seal the courtroom for a portion of the hearing, after conferring with petitioner and his counsel and determining that there were certain "matters of a personal and confidential nature" that should be heard under seal. [Doc. 75 at 2–4].  While the argument and discussion cited herein from Document Number 75 are part of the sealed transcript, the undersigned has determined that they are unrelated to the basis upon which the proceeding was sealed, and that particularly in view of the petitioner's claims herein, there is no harm or prejudice in referencing them in this Report and Recommendation.

[Doc. 75 at 12–14].   When the courtroom was unsealed, the Court addressed the argument advanced by petitioner's counsel regarding purity.

> The Court: "I think you're exactly right, Mr. Erhard.  You know, originally, the different treatment under the guidelines based on the purity level was a --- sort of organizational structure.  But whether expressly contemplated by the sentencing commission or it just aligns this change in the marketplace of the meth and its purity and its potency and its addictive qualities, we really don't see unpure meth.  The only issue is whether or not it gets tested.  Because you don't have to cut it. You can get it everywhere.

[Doc. 74 at 13 - 14].  Judge Kleeh further acknowledged the authority relied upon by petitioner herein and raised by his counsel during the hearing.

> The Court:  I'm certainly aware of how some judges have noted and taken a different tact, if you will, on that distinction in treatment under the guidelines based on purity levels.  I think the purity level, at least how it's treated under the guidelines, warrants that –I'm probably not using the right word – disparate treatment given what it does to folks.

[Doc. 74 at 15].  In this regard, the Court noted that petitioner was a "classic example" of how methamphetamine changes a person "completely into someone who just has to do anything and everything to get that next hit, that next score, and to keep the supply going."  [Id.].  The Court further observed that with respect to petitioner's criminal history, in addition to the "usual…driving offenses…and the rest," he also had burglary and battery charges, demonstrating the "ripple effect of this horrible substance." [Id.].

Furthermore, although the Pre-Sentence Report prepared by the Probation Officer assigned petitioner a base offense level of 32, with a three-level reduction granted by the Court for acceptance of responsibility, bringing his total offense level to 29; a criminal history category of VI; and an advisory guidelines range of 151 to 188 months imprisonment, Judge Kleeh did, nonetheless, did grant a downward variance for petitioner. [Doc. 75 at 8–9, 15–16].

The Court:  But with all of that said, mindful of everything we talked about here today, I do think that the guideline recommendation is somewhat excessive. I do intend to vary downward and impose a sentence of 140 months here today.

[Id. at 15]. The undersigned finds that petitioner has thus failed to demonstrate that counsel's representation fell below an objective standard of reasonableness and accordingly, his claim for ineffective assistance of counsel regarding an alleged failure to argue against the use of the applicable methamphetamine guideline calculation thus fails as a matter of law.

**B.    Petitioner is unable to show that his counsel was ineffective for failing to move for a continuance**

Petitioner's claim that his counsel was ineffective for failing to move the Court for a continuance so that he could "thoroughly investigate the Sentencing Guidelines provision regarding methamphetamine purity, in relation to its usage of purity as a proxy for Movant's culpability" likewise is without merit.  There is simply no basis for his assertion that said failure prejudiced his defense. [Doc. 58-1 at 6]. Clearly, the Court considered the argument regarding purity and furthermore articulated its basis for denying it.   Indeed, given the fact that the Court had already explained its reasoning for not accepting defense counsel's argument, in addition to the downward departure the Court did grant, the undersigned finds no reasonable probability that a continuance to allow for further argument would have changed the outcome of petitioner's sentencing.

Accordingly, the undersigned finds that petitioner has failed to demonstrate ineffective assistance of counsel.  He is clearly unable to meet the performance prong of *Strickland* because defense counsel made the very argument petitioner contends he ought to have raised.  Further, to the extent petitioner argues defense counsel should

have moved to continue sentencing proceedings, he is unable to meet the prejudice prong of ***Strickland*** because the Court had already explicitly rejected this argument.

### V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [**Civil Action Number 1:24-CV-34 Doc. 1; Criminal Action Number 1:24-CR-21 Doc. 64**] be **DENIED** and **DISMISSED with prejudice**.

Within fourteen days after service of this Report and Recommendation, the petitioner may file with the Clerk of this Court**, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**.  A copy of such objections should also be submitted to the United States District  Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave  to exceed the page  limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour***, 889 F.2d 1363 (4th Cir. 1989); ***Thomas v. Arn***, 474 U.S. 140 (1985); ***Wright v. Collins***, 766 F.2d 841 (4th Cir. 1985); ***United States v. Schronce***, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the  petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the

Magistrate Judge's association with the civil case.

DATED:  September 11, 2024


/s/ *Michael John Aloi*

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE